IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jovan Cornelius Simon, # 25282-171, | ) | CIVIL ACTION NO. 9:13-3025-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION\** |
| L/CPL Kevin Page,[1] SCHP; Trooper Bucky | ) | |
| Geddings, SCHP; L/cpl Mark Jennings, | ) | |
| SCHP; Agent H. Eric Cohoon, ATF; and | ) | |
| South Carolina Dept. Of Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983,[2] and

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),[3]

---

[1] While Plaintiff spells this Defendant's name as "Paige" in his pleadings, the correct spelling of his name is "Page". See Page Affidavit.

[2] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. See McKnight v. Rees, 88 F.3d 417(6th Cir. 1996). As state officials, the Defendants Page, Geddings and Jennings are subject to suit under this statute in their individual capacities. In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

[3] In Bivens, the United States Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim brought against a federal official for violation of a plaintiff's constitutional rights is analogous to a claim brought under § 1983 against a state official in his or her personal



against the named natural Defendants. The Defendant South Carolina Dept. of Public Safety(SCDPS) is being sued pursuant to the South Carolina Tort Claims Act (SCTCA). Plaintiff is currently an inmate with the Federal Bureau of Prisons, but at the time this action was filed he was a pretrial detainee at the Horry County Detention Center in Conway, South Carolina. Plaintiff claims that the Defendants were deliberately indifferent and/or negligent with regard to his personal safety and medical needs while in their custody as a pretrial detainee.

The Defendants Geddings, Jennings, Page, and South Carolina Department of Public Safety (SCDPS) filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 21, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 22, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted. Plaintiff filed a memorandum in opposition to these Defendants' motion on December 1, 2014. Thereafter, the Defendant Cohoon filed a motion for summary judgment on December 4, 2014, and following the issuance of the second Roseboro order, Plaintiff filed a response in opposition to Cohoon's motion on January 8, 2015.

These motions are now before the Court for disposition.[4]

---

capacity for violation of a plaintiff's constitutional rights while the defendant was acting under color of state law. Federal officials cannot be sued under § 1983 because they do not act "under color of state law." Harlow v. Fitzgerald, 457 U.S. 800, 814-20 (1982). As a federal official, the Defendant Cohoon is subject to suit under this statute in his individual capacity. Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825, 839 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-44 (4th Cir. 1988) (abrogated on other grounds by Johnson v. Jones, 515 U.S. 304 (1995); Winfield v. Bass, 106 F.3d 525, 529 (4th Cir. 1997)).

[4]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local



## Background and Evidence

Plaintiff alleges in his verified Complaint[5] that on May 9, 2013 he was arrested by the Defendant Geddings, who was assisted by Defendants Jennings and Page. Plaintiff alleges that Geddings asked Page to transport him to the Horry County Detention Center and Plaintiff was put into Page's cruiser in the front seat with his hands cuffed behind his back. Plaintiff alleges that he asked Page to allow him to use his inhaler, but the request was denied. Plaintiff alleges that, while en route to the Detention Center, Page was texting on his cell phone and Plaintiff fell asleep, but as they approached the Detention Center driveway entrance, Page ran into a metal pole. Plaintiff alleges that he suffered a whiplash injury and was startled awake by the collision. Plaintiff alleges that Page quickly reversed the cruiser away from the pole and drove on into the sally port of the Detention Center, ignoring Plaintiff's well being, and hurriedly hustled Plaintiff inside and turned him over to jail staff, telling them to strip search Plaintiff. Plaintiff alleges that a staff member remarked that Plaintiff appeared disoriented and Plaintiff told him about the collision and that Plaintiff had hurt his neck.

Plaintiff alleges that staff then checked a video recorder and that a "Corporal Jones" confirmed that Page's cruiser had hit the metal pole, but Jones told Plaintiff that he should have said something before Page left and the Detention Center would not have accepted Plaintiff into custody until he had been medically cleared. Plaintiff alleges that he was seen by Detention Center medical

---

Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[5]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



staff to whom he complained that his neck was injured and painful, and that he was given Ibuprofen by the nurse and, as he was sitting in her office, he noticed a yellow sticky note on his file with the name Trooper Causey and telephone number 843-365-5004. Plaintiff alleges that he was placed in a holding cell after intake and, when he complained that his neck still hurt, was told to make a medical request in the morning if it still hurt. Plaintiff alleges that he was later moved to the detox unit, as if staff thought he was "on something" and, when he asked again about medical attention for his neck, he was told to make an electronic request at the kiosk the next day. Plaintiff alleges that he had trouble resting that night due to the neck pain.

Plaintiff alleges that, the next day after breakfast, he was called to be transferred into federal custody and never got the chance to use the kiosk to request medical attention. Plaintiff alleges that he was placed in a holding cell where he again complained of his neck pain. Plaintiff alleges that, after a while, Defendant Cohoon arrived and took custody of Plaintiff and transported him to the McMillan Federal Building in Florence, where Plaintiff continued to complain about his neck pain. Plaintiff alleges that a white female U.S. Marshal stated "we're not going to be able to take him if he's complaining about his injuries," and moments later a bald white male U.S. Marshal wearing glasses came out screaming and cursing at Plaintiff about how there was nothing wrong with him and that Plaintiff was not going to get any money out of the government. Plaintiff alleges that he was crying and trying to explain what happened to him the day before, but Cohoon and another agent just joked and laughed that they should take Plaintiff to Dillon County where "they'll take real good care of him there."

Plaintiff alleges that he was placed in a holding cell and was later taken into a room where he went through an intake-like process conducted by the same white female Marshal and

4



another white female.  Plaintiff alleges that he complained again about his neck injury and pain, and was told that he should tell the jail staff when he got there, and they would get him some medical attention.  Plaintiff alleges that he was then taken to the Florence County Detention center in Effingham by Defendant Cohoon and, when he arrived, he made the jail staff aware of his neck injury and his asthmatic wheezing.  Plaintiff alleges that he was given a breathing treatment immediately and then given Motrin 800 for his neck pain and was told that, if it continued to hurt over the weekend, he should fill out a medical request and they would see him again.

Plaintiff alleges that, over the weekend of May 11-12, 2013, his neck continued to hurt and he was seen by medical staff on May 13, 2013, at which time he was given more Motrin 800 and a two-week supply of pain-relieving gel.  Plaintiff alleges that his neck pain persisted and, when he ran out of the gel, he filled out more medical request forms on June 1 and 3, 2013.  Plaintiff alleges that he was seen by medical staff again on June 11, 2013 and was informed that he would have to purchase additional pain-relieving gel through the commissary as they were no longer giving it out.  Plaintiff alleges that, because his funds were limited, for months he had to make deals with other inmates to purchase pain medication and pain-relieving gel from the commissary.

Plaintiff alleges that, on August 8, 2013, he was transferred to the Dillon County Detention Center, where there were no medical request forms and where any medical care was scare.  Plaintiff alleges that, on November 2, 2013, during a suppression hearing at the McMillan Federal Building, Plaintiff was able to view the dashcam video from Page's cruiser of Plaintiff's May 9, 2013 trip to the Horry County Detention Center in which Page can be seen and heard texting while driving.  Plaintiff alleges that his neck injury still troubles him occasionally.  Plaintiff seeks $100,000 for pain and suffering, $100,000 for possible future medical treatment, and $50,000 in punitive



damages from each named Defendant.

In an amendment to his complaint filed March 26, 2014, Plaintiff further alleged that on May 9, 2013, after observing him being placed in the front seat of Page's cruiser with his hands cuffed behind his back, the Defendants Geddings and Jennings failed to instruct Page in the proper procedure and/or customary practices of the South Carolina Highway Patrol, and further failed to bring Page's errors to his attention even though they were aware of Page's errors.  See generally, Amendment filed March 26, 2014.

In a Second Amendment to his Complaint filed April 15, 2014, Plaintiff alleges that Page was deliberately indifferent to his safety by placing him in the front seat of the patrol car with his hands cuffed behind his back even though Page was aware that this was unsafe and against Highway Patrol customs and procedures, and that Page further demonstrated his deliberate indifference to Plaintiff's safety by his continuous acts of texting while driving.  Plaintiff also repeats his allegations against Geddings and Jennings from his first Amendment, and alleges that because of these Defendants deliberate indifference to his safety he sustained significant physical injury, as well as "severe emotional distress and mental anguish . . . .".  Plaintiff further alleges that Page failed to inquire as to his physical condition after he sustained an injury in the automobile collision, and failed to see that he obtained adequate medical attention and care even though Plaintiff "exhibited obvious signs of distress, disorientation, discomfort, and pain".  Plaintiff further alleges that the Defendant Cohoon also failed to see that he obtained medical attention after Plaintiff had made him aware that he had been injured and complained of pain.  See generally, Plaintiff's Second Amendment filed April 15, 2014.

In a third Amendment to his Complaint filed June 2, 2014, Plaintiff added the South

6



Carolina Department of Public Safety as a party defendant for purposes of asserting a claim of negligence under the South Carolina Tort Claims Act. <u>See</u>, <u>Plaintiff's Third Amendment</u> filed June 2, 2014.

In support of summary judgment, the Defendant Kevin Page has submitted an affidavit wherein he attests that he is a Corporal with the South Carolina Highway Patrol. Page attests that on May 9, 2013 he responded to a call where the Plaintiff had been pulled over by the Defendant Geddings, also a Corporal with the Highway Patrol. Page attests that it had been determined that Plaintiff was driving under suspension and also had active warrants on him from ATF, and that he had been called to the scene to transport Plaintiff to the Horry County Detention Center. Page attests that Plaintiff was cuffed and placed in the front seat of the patrol car pursuant to SCDPS policy and procedure, and that Plaintiff was then driven to the Detention Center without incident. Page attests that Plaintiff had his eyes closed and was sleeping, or pretending to sleep, during the later part of the trip.

Page attests that upon arrival at the Detention Center, he turned into the Detention Center and proceeded to enter the sally port at the facility, during which time Plaintiff was sitting quietly with his eyes shut. Page attests that the gate to the sally port unexpectedly shut without warning on the patrol car, but that the impact on the vehicle was so minor that it made no marks on the vehicle, nor did the vehicle require any repairs. Page attests that he was not injured, and does not believe that anyone could have been injured by such minimal contact. Page further attests that Plaintiff never reported any injury to him, and that he did not know or have any reason to know that Plaintiff had suffered any injury requiring medical attention. Page attests that he delivered Plaintiff into the custody of Detention Center employees and then left, having no further contact with the



7

Plaintiff.  See generally, Page Affidavit.

The Defendants have also submitted a copy of the Department of Public Safety Transportation Policy (Exhibit A to Court Docket No. 84), which provides, inter alia, that except in unusual circumstances a prisoner being transported shall be handcuffed with their hands behind their backs, and that when one officer is transporting one prisoner, the prisoner is to be placed in the right front seat.  See Defendants' Exhibit A, p. 3 [¶ ¶ VI (A) and VII (A)].

The Defendant Eric Cohoon has also submitted an affidavit wherein he attests that he is a retired Special Agent with ATF, but that during the time period at issue he was an ATF Senior Special Agent.  Cohoon attests that on September 25, 2012, Plaintiff was charged with one count of being a felon in possession of a firearm, and a warrant was issued for his arrest.  Cohoon attests that on May 9, 2013, he was notified that Plaintiff had been taken into custody by officers of the South Carolina Highway Patrol following a routine traffic stop, and that he was being held at the Horry County Detention Center.  Cohoon attests that he arrived at the Detention Facility the following day, May 10, 2013, to take custody of the Plaintiff and transport him to the U. S. Courthouse in Florence, South Carolina for his initial appearance.  Cohoon attests that he was accompanied by Special Agent Billy Hosare.  Cohoon attests that, before taking Plaintiff into custody, he completed the United States Marshal Service medical prescreening form, during which he asked Plaintiff several questions about his medical condition.  Cohoon attests that Plaintiff mentioned that while he was being transported to the detention facility the previous day the patrol car in which he was riding had struck something in the sally port area, but when he asked Plaintiff if he was injured, Plaintiff responded "no".  Cohoon attests that the only medical issue Plaintiff informed him of was that he had asthma and used an inhaler, which he [Cohoon] noted on the medical prescreening form.



Cohoon attests that he and Hosare then transported Plaintiff to the United States Courthouse without incident, and that upon arriving at the courthouse, he presented Plaintiff to the United States Marshal's Service for prisoner intake screening. Cohoon attests that during this screening process, Plaintiff informed the Deputy Marshal about the incident the previous evening involving the patrol car and began to complain about neck pain. Cohoon attests that the Deputy Marshal then contacted her supervisor for assistance, who in turn asked the Plaintiff why he had earlier indicated that he was not injured. Cohoon attests that Plaintiff responded that he had complained about his injury earlier that day, in response to which Cohoon presented the supervisory Deputy Marshal with the medical questionnaire he had prepared for the Plaintiff that morning including Plaintiff's statement that he was not injured. Cohoon attests that, at that point, the supervisory Deputy Marshal determined that Plaintiff would be accepted into federal custody, and completed the intake process. Cohoon attests that he does not recall making any comments, in jest or otherwise, about Plaintiff's medical condition or about the nature of the medical care he would receive at any particular facility, or at any other time. Cohoon attests that after turning Plaintiff over to the United States Marshal Service, the only other contact he had with him was during court appearances and on one occasion at a detention facility when Plaintiff took a polygraph test. See generally, Cohoon Affidavit.

The Defendants have submitted several exhibits in connection with Cohoon's Affidavit, which include (as Exhibit 5 to Court Docket No. 90) a copy of Plaintiff's medical prescreening form completed by Cohoon, and which indicates that Plaintiff has asthma, but with no other medical problems being listed. Defendants have also provided copies of several documents relating to Plaintiff's federal criminal charges and the disposition of his case.



Other than the factual allegations of his Complaint, Plaintiff has provided no evidence to the Court to support his claims.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence presented to the Court, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

### I.

As a pretrial detainee during the time period set forth in the Complaint, Plaintiff's constitutional claims are evaluated under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment (which is used to evaluate conditions of confinement for those

10



convicted of crimes). See Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, the underlying standard is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].

Pursuant to this standard, in order to avoid summary judgment on his failure to protect claim Plaintiff must have evidence sufficient to demonstrate that one of the named natural Defendants put his personal safety at risk by transporting him in the police car in an improper manner or by disregarding or ignoring the fact that Plaintiff had suffered a serious injury. In other words, a police officer or jail guard cannot be found liable for a constitutional violation based on their treatment of a prisoner in their custody "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". Farmer v. Brennen, 511 U.S. 825, 834-835 (1994); see also Pruitt v. Moore, No. 02-395, 2003 WL 23851094 at *9 (D.S.C. July 7, 2003) [Only deliberate or callous indifference on the part of prison officials to a specific known risk of harm states a constitutional claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety].

Similarly, to proceed with his medical claim Plaintiff must have evidence sufficient to create a genuine issue of fact as to whether any named natural Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer, 511 U.S. at 834-835; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th



Cir. 1990). <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."].

## II.

With respect to the Defendants Geddings and Jennings, Plaintiff has presented no evidence to show that either of these two Defendants violated his constitutional rights. The only allegations relating to these two Defendants is that they were present when Page placed Plaintiff in the front seat of his cruiser with his hands cuffed behind his back. Plaintiff alleges that these two Defendants were deliberately indifferent to his safety because the way Page transported him to the Horry County Detention Center was in violation of SCDPS policy and both Geddings and Jennings failed to correct Page's actions or instruct him on how to properly transport the Plaintiff.

However, the Defendants have submitted as an exhibit a copy of the applicable SCDPS Transport Policy, which shows that Page transported Plaintiff exactly how he was instructed to pursuant to that policy. <u>See</u> <u>Defendants' Exhibit A</u>, p. 3 [¶ ¶ VI (A) and VII (A)]. Plaintiff has provided no evidence to call into question or create a genuine issue of fact about the authenticity of this exhibit, to show that Gedding or Jennings failed to take any proper corrective action required by this policy, or to show that either of these two Defendants was deliberately indifferent to Plaintiff's safety in any way. <u>Farmer</u>, 511 U.S. at 834-835 [to be liable, official must both know of and disregard an excessive risk to the detainee's safety - "the official must both be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"].

Additionally, other than being present when Plaintiff was placed in the patrol car, Plaintiff has not alleged that either of these two Defendants was present or had anything to do with



any of the other events set forth in the complaint.  Unless a Plaintiff alleges specific wrongdoing on the part of a named Defendant, that Defendant may not be held liable for the acts of others. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978); <u>Wetherington v. Phillips</u>, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), <u>aff'd</u>, 526 F.2d 591 (4th Cir. 1975); <u>Joyner v. Abbott Laboratories</u>, 674 F.Supp. 185, 191 (E.D.N.C. 1987); <u>Stubby v. Hunter</u>, 806 F.Supp. 81, 82-83 (D.S.C. 1992).

Therefore, Geddings and Jennings are entitled to dismissal as party Defendants even if the case were to otherwise proceed against the remaining Defendants.

**III.**

With respect to Page and Cohoon, Plaintiff has presented no evidence to show that either of these two Defendants was deliberately indifferent to a known risk of harm to him, either from the way he was transported in the police car or by a failure to secure necessary medical care or attention for him.

First, as previously noted, Plaintiff has presented no evidence whatsoever to show that the way he was transported to the Detention Center (handcuffed and seated in the front seat of the patrol car) was deliberately or callously indifferent to a specific known risk of harm to him (or was in violation of any Department of Public Safety policy, as Plaintiff alleges), nor has he presented any evidence to show that either Page or Cohoon was aware that he had sustained serious injuries when the patrol car hit the gate in the sally port, or that he in fact suffered any injuries at all.  <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].  While Plaintiff asserts several allegations in his complaint, such as that he suffered a "whiplash injury" when Page struck something in the sally port, that a detention center staff member remarked on his arrival at the Detention Center that he appeared disoriented, that there



is a video that confirms that Page's cruiser was in a significant collision when it hit a metal pole, and that he was subsequently seen by the Detention Center's medical staff about his neck complaints, he has provided no actual evidence (such as sworn statements from these witnesses , copies of any videos, or any medical documents or findings) to support his claim that he suffered a significant injury, or indeed any injury at all. Baber, 977 F.2d at 874-875 [If the moving party produces evidence that judgment on the pleadings is appropriate, to survive summary judgment the opposing party must respond to the motion with evidence showing there is a genuine issue for trial].

Further, even assuming for purposes of summary judgment that Plaintiff did ask to use his inhaler while in the police cruiser and did complain that he had been injured upon arrival at the Detention Center, as he alleges, he still has presented no evidence to show that any named Defendant (or any other police official or detention center officer) was deliberately or callously indifferent to a serious medical need, because he has provided no evidence to show that he suffered an asthmatic event in the police cruiser, suffered a neck injury as a result of being in a wreck in the police cruiser, or that he was injured by Page's actions in any way. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical or mental injury is inadequate to survive a motion for summary judgment]. He has provided no medical records to support this claim, no affidavits or treatment notes from any medical professionals who provided care or treatment, or records or findings from any other medical professionals who may have examined him at the time or since and who could confirm that he in fact suffered an injury. Cf. Wilson v. Cook County Bd. of Commissioners, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that conditions in detention facility violated his due process rights where detainee failed to show remedial injury]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished

14



opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

Finally, while Plaintiff has provided no evidence to show that he incurred any injury, even if he had, Plaintiff has also himself alleged that, after Page checked him into the detention center, he was seen by the Detention Center Medical staff to for his complaints that his neck was injured and painful, and that he was given Ibuprofen by a nurse and told to make a medical request in the morning if his neck still hurt. Plaintiff then alleges that although his neck did still hurt, he did not get the chance to request medical attention the following day because, the next day after breakfast, he was transferred into federal custody and transported to Florence by the Defendant Cohoon. However, when he arrived in Florence and again complained about his injuries, although Plaintiff alleges that Cohoon and the U. S. Marshal joked about his injuries and did not take him seriously, he nevertheless also alleges that he underwent an intake-like process by two female Marshals who told him they would get him some medical attention when he got to the jail. Plaintiff then alleges that when he got to the jail and made the jail staff aware of his neck injury and his asthmatic wheezing, he was immediately given breathing treatment as well as Motrin 800 for his neck pain, and was told that if his pain continued he should fill out a medical request to see him again. Plaintiff also alleges he was seen several other times by medical personnel for his complaints.

Hence, even assuming Plaintiff's wholly unsubstantiated claim that he suffered some type of neck injury to be true for purposes of summary judgment, Plaintiff has failed to show that any named Defendant was deliberately indifferent to his serious medical needs, as by Plaintiff's own statements, he received medical attention for his complaints. While Plaintiff apparently believes he should have been provided some different type of treatment (although he does not specify what



exactly he believed should have been done), that is not a basis for a constitutional medical claim. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; see also Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Green, 100 Fed.Appx. 45 [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"]; see, e.g., Riley v. Honeywell Technology Solutions, Inc., 323 Fed.Appx. 276, 278, n. 4 (4th Cir. 2009)[Holding that Plaintiff's "self-serving contentions" that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support"]; Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; King v. Flinn & Dreffein Eng'g Co., No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. 2012)[Finding no genuine issue of fact where only evidence opposing summary judgment was "uncorroborated and self-serving" testimony], citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks



16

omitted)].

Therefore, while Plaintiff may conceivably have a state law claim he could assert arising from these events, or some further administrative remedy he could pursue, the undersigned does not find the evidence before this Court is sufficient to create a genuine issue of fact as to whether a constitutional violation occurred under the facts presented. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care].

## IV.

As earlier noted, Plaintiff also amended his Complaint to assert a state law negligence and/or medical claim against the State of South Carolina (through the naming of the SCDPS as a Defendant by virtue of actions and/or alleged inactions of highway patrol officers and/or jail officials) pursuant to the South Carolina Tort Claims Act (SCTCA). See S.C. Code Ann. § 15-78-10, et. seq. However, if the recommendations set forth herein with respect to Plaintiff's federal claims are accepted, these will be the only claims remaining in this lawsuit, and even assuming this Court could otherwise exercise supplemental jurisdiction over these claims,[6] this Court should not

---

[6]The exercise of supplemental jurisdiction over these claims would be problematic given the fact that the SCTCA only waives the State of South Carolina's sovereign immunity from suit in *state court* for certain tort claims, while specifically reserving South Carolina's Eleventh Amendment immunity from suit in federal court. See S.C. Code Ann. § 15-78-10, et. seq.; see also § 15-78-20(e) ["Nothing in this chapter is construed as a waiver of the state's . . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."]. Therefore, even if Plaintiff's federal claims were allowed to proceed, his state tort claims asserted under the



exercise supplemental jurisdiction over Plaintiff's state law claims.  See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ['"[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].  Rather, when federal claims presented in a case are dismissed, any remaining state law claims should also be dismissed under the general doctrine developed in United Mine Workers v. Gibbs, 383 U.S. 715 (1966), and its progeny.  This doctrine recognizes the state court's role in determining whether summary judgment on state law claims is warranted.  Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"].

Therefore, Plaintiff's remaining state law causes of action should be dismissed, without prejudiced.  McClurkin v Byer, No. 13-1507, 2013 WL 3746027 at * 6 (D.S.C. July 15, 2013) [Where Plaintiff failed to show Defendants violated his rights under § 1983, state law negligence claim against the state should be dismissed].  This will not only allow the Plaintiff to obtain a ruling as to the viability of these state law claims from a more appropriate forum, but if his claims  were to survive summary judgment, it would be much more appropriate for those state law claims to be tried in state court.  Dismissal of these state law claims would also not prejudice the Plaintiff, as the parties could seek a fast track for resolution of these claims at the state level; See Rule 40(c), S.C.R.Civ.P.; and there are no statute of limitations problems because federal law also provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards.  See 28 U.S.C.A. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, et al., 204 F.3d 109, 123-124 (3rd Cir. 2000); Beck v.

---

SCTCA would be subject to dismissal.  Laudman v. Padula, No. 122382, 2013 WL 5469977 at * 7 (D.S.C. Sept. 30, 2013).



Prupis, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) ["a dismissal under section 1367 tolls the statute

of limitations on the dismissed claims for 30 days"]; cf. National Federation of Independent Business

v. Sebelius, 132 S.Ct. 2566, 2592 (2012).

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motions for summary

judgment with respect to Plaintiff's federal constitutional claims being asserted against the named

natural Defendants under 42 U.S.C. § 1983 and/or Bivens be **granted,** and that those claims be

**dismissed**.  It is further recommended that Plaintiff's state law claims against the South Carolina

Dept. of Public Safety being asserted under the South Carolina Tort Claims Act be **dismissed**,

without prejudice.  Plaintiff may then pursue these state laws claims in a more appropriate state

forum, if he chooses to do so.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 11, 2015
Charleston, South Carolina

19



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a Defendants' Exhibit novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

